UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

DWAYNE D. STOVALL,                                    Civil No. 05-85 (JMR/AJB)

          Plaintiff,

    v.                                                         **REPORT AND RECOMMENDATION**

DARBY BUNNELL,
PAUL PIETRUS,
BRIAN O'SHAUNESSY,
MARYLYNN A. NOLL,
FEMALE DOE LAST NAME HERALD, and
2 MALE JOHN DOES,

          Defendants.

_____

Plaintiff, a former state prison inmate, brought this action under 42 U.S.C. § 1983, claiming that his constitutional rights were violated while he was incarcerated at the Minnesota Correctional Facility at Lino Lakes, Minnesota, ("MCF-LL"). The named Defendants, who are employees of the Minnesota Department of Corrections, have filed a motion seeking to have this action dismissed pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. The matter has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it will be recommended that Defendants' motion be granted in part, and denied in part.

## I.  FACTUAL BACKGROUND

Plaintiff's lawsuit is based on an incident that occurred at MCF-LL on May 28, 2004. On that date, a "Watch Commander" at MCF-LL ordered that Plaintiff be removed from the general prison population, and placed in segregated confinement, pending the

outcome of disciplinary charges brought against Plaintiff for allegedly smuggling a plastic "hair pick" into his cell.  Defendant Darby Bunnell was directed to carry out the Watch Commander's order.   Bunnell was assisted by two fellow correctional officers, Defendants Paul Pietrus and Brian O'Shaughnessy.[1]

Bunnell went to Plaintiff's cell, and told him several times to leave the cell.  Despite Bunnell's repeated commands, Plaintiff did not come out of his cell right away.  (Affidavit of Darby Bunnell, [Docket No. 48], p. 2, ¶ 9.)  Plaintiff claims that he was not deliberately disobedient, but it took him some time to respond to Bunnell, because he had to climb out of his bunk and put on his shoes.  (Affidavit of Dwayne Stovall, [Docket No. 52], pp. (4) - (5), ¶ 8.)

When Plaintiff finally did come out of his cell, Bunnell put handcuffs on him, and he was then escorted to the segregation unit.  While Plaintiff was being taken to the segregation unit, Bunnell was walking next to him on his right side, O'Shaughnessy was on his left side, and Pietrus was behind him.  (Bunnell Aff., pp. 2-3, ¶ 11.)  All three correctional officers claim that while they were escorting Plaintiff to the segregation unit, he attempted to pull away from them on several occasions, and that he was verbally abusive toward them.  (Id.; Affidavit of Brian O'Shaughnessy, [Docket No. 46], p. 2, ¶ 6, p. 3, ¶ 9; Affidavit of Paul Pietrus, [Docket No. 47], p. 2, ¶ 10.)  Plaintiff denies that he was physically resistant.  (Stovall Aff., p. (6), ¶ 21.)  He does not deny that he was verbally abusive, but claims that the correctional officers also were verbally abusive toward him.  (Stovall Aff., pp. (5) - (7), ¶s 11, 12, 19, 20, 24.)

---

[1] O'Shaughnessy's last name is misspelled as "O'Shaunessy" in Plaintiff's complaint, and, concomitantly, in the caption of this action.

During the trip to the segregation unit, Plaintiff and his three escorts entered a "sallyport" – a short secured hallway with doors on each end, which serves as a controlled transition area between different parts of the prison. Plaintiff and Defendants have provided dramatically different descriptions of what happened in the sallyport.

Plaintiff says that after he entered the sallyport, Defendant Bunnell pushed his face into a glass door, and said "let's take him down." According to Plaintiff, Bunnell then let go of his right arm, O'Shaughnessy let go of his left arm, and Pietrus grabbed him by the ankles and "snatched" him off his feet. Plaintiff states that he had no way to protect himself from falling, because his hands were still handcuffed behind his back; so when Bunnell and O'Shaughnessy let go of him, and Pietrus tackled him by the ankles from behind, he fell straight to the ground, face forward, and struck his forehead on the concrete floor. Thereafter, Plaintiff says, Bunnell first knelt on his back yelling obscenities at him, and Bunnell then grabbed the cuffs and pulled Plaintiff  "up into the air causing extreme pain in [Plaintiff's] shoulder cuff area." Plaintiff states that Pietrus also kneeled on his back, "causing even more pain" to Plaintiff, while O'Shaughnessy "stood idly by as the incident unfolded... failing to intervene." (Stovall Aff., pp. (7) - (8), ¶s 24-31.)

According to Bunnell, Pietrus and O'Shaughnessy, when Plaintiff entered the sallyport, he began "lurching, struggling, pulling around, and generally resisting" so much that it became necessary to "take him to the floor." (Bunnell Aff., p. 3, ¶s 14-15; see also Pietrus Aff., pp. 2-3, ¶s 12-13; O'Shaughnessy Aff., p. 3, ¶ 11.) All three of Plaintiff's escorts state that he was taken to the ground by means of a commonly-used inmate control technique, which involved lifting him at the waist and thighs and then lowering him to the ground. They contend that this

3

tactic was executed smoothly and without incident, and that Plaintiff was not pushed face first into a wall, he was not grabbed by the ankles, his feet were not pulled out from under him, he did not fall face first to the floor, and his handcuffs were not tightened. (O'Shaughnessy Aff., p. 3, ¶s 11, 15-17; Pietrus Aff., p. 3, ¶s 13, 16, 18-20; Bunnell Aff., p. 3, ¶s 15, 18-22.)

After Plaintiff was subdued on the floor of the sallyport, several additional correctional officers were summoned to the scene, and Plaintiff was then escorted the rest of the way to the segregation unit without further incident. After Plaintiff arrived there, he was strip-searched, (in accordance with standard prison procedures), and his handcuffs were removed.

Plaintiff claims that he asked for medical treatment during the strip search, but Bunnell said no medical treatment was needed. (Stovall Aff., p. (9), ¶ 33.) Sometime later, however, Plaintiff was examined by a prison nurse – Defendant Ann Herold. (Id., p. (9), ¶ 34.) Plaintiff claims that he told Herold that he felt pain in his head, wrists and back, and he asked Herold to "document" his bruises in those areas, including the "knot on [his] forehead." (Id., p. 9, ¶s 34-35, 37.)

Bunnell claims that he does not "recall seeing any injuries" to Plaintiff when he arrived at the segregation unit, "other than a scraped knee." (Bunnell Aff. p.4, ¶ 24.) O'Shaughnessy does not recall seeing any injury to Plaintiff at all. (O'Shaughnessy Aff., p. 3, ¶ 20.) And Pietrus claims that Plaintiff "may have scraped his knees," but "did not have a bump on his head." (Pietrus Aff., p. 3, ¶s 22-23.)

Plaintiff claims that "[i]mmediately after the incident," he started trying to find out whether the injuries he allegedly sustained in the sallyport were fully reported in his medical records. (Stovall Aff., p. (10), ¶ 39.) He purportedly contacted Herold, and her supervisor,

Defendant Marylynn Noll, and asked for copies of his records. (Id., p. 10, ¶ 40.) When Plaintiff found out that his medical records did not mention all of the injuries he allegedly had reported, he sought an explanation from Noll. (Stovall Aff., p. (11), ¶ 43; Plaintiff's Exhibits, [Docket No. 55], Exhibits 5, 8, 9, 13.) Plaintiff did not receive a response from Noll that he found to be acceptable.

Plaintiff has filed a copy of a "Memorandum" prepared by a correctional official named Robinson, which appears to be a report of an internal investigation of what happened in the sallyport. (Id., Exhibits 50-57.) The Robinson Memorandum raises some questions about some of the statements made by Defendants Bunnell, Pietrus, and O'Shaughnessy. The Memorandum indicates, for example, that although Bunnell, Pietrus and O'Shaughnessy reported that Plaintiff was "resisting and pulling away while in the B-Building hallway," Robinson could see nothing to support that statement when he viewed video recordings of Plaintiff and Defendants in the B-Building hallway. (Id., ¶ 2.)

The Robinson Memorandum also indicates that while Bunnell, Pietrus, and O'Shaughnessy reportedly saw no injuries to Plaintiff immediately after the sallyport incident, Robinson saw Plaintiff five days later, and found that he still had visible injuries that were consistent with his description of the incident, including a "bump on his head, slight bruising around his wrists, ... a few minor scratches and red marks near the neck and right shoulder area," as well as a scraped knee. (Id., Exh. 57, ¶ 4.) Plaintiff has also submitted a DVD of the strip-search that occurred when he arrived in the segregation unit. (Docket No. 55.) Although the quality of that recording could be better, it does appear that Plaintiff had a bump on his forehead immediately after the sallyport incident.

## II. PLAINTIFF'S CLAIMS

Plaintiff's lawsuit against Defendants is brought under 42 U.S.C. § 1983.  He claims that Defendants violated his constitutional rights under the Eighth Amendment, while they were acting under color of state law.  More specifically, he claims that Defendants Bunnell, Pietrus and O'Shaughnessy violated his Eighth Amendment rights by using "excessive force" against him while he was in the sallyport, and that Defendant O'Shaughnessy further violated his Eighth Amendment rights by failing to protect him from Bunnell and Pietrus.  Plaintiff also claims that Defendants Herold and Noll violated his Eighth Amendment rights by "not reporting suspicious wounds."  (Plaintiff's Reply Memorandum, [Docket No. 53], p. 1.)

Defendants deny that they violated Plaintiff's constitutional rights, and further contend that Plaintiff's claims should be dismissed on the grounds of qualified immunity.  For the reasons discussed below, the Court finds that Plaintiff's claims against Defendants Herold and Noll must be dismissed, but Plaintiff's claims against Defendants Bunnell, Pietrus and O'Shaughnessy cannot be dismissed at this time.

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986.  In one of those cases, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of

the summary judgment procedure:

> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. Fed. R. Civ. P. 56(c). To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e). If a motion for summary judgment is properly supported by affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Id. at 587; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party may not rely on conclusory allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999).

The moving party is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co., 475 U.S. at 587.  The Court considers the Motion for Summary Judgment based upon the material presented in connection with the Motion.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

The Court is mindful that pro se pleadings should be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983).  Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment.  Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984).  Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial.  Miller v. Solem, 728 F.2d 1020, 1023,

(8th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 841 (1984); <u>Quam v. Minnehaha County Jail</u>, 821 F.2d 522 (8th Cir. 1987).

## IV.  DISCUSSION

    A.  <u>Plaintiff's Claims Against Defendants Bunnell, Pietrus and O'Shaughnessy</u>

As previously noted, Plaintiff claims that Defendants Bunnell, Pietrus and O'Shaughnessy violated his Eighth Amendment rights by using excessive force against him while he was in the sallyport.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." <u>Johnson v. Blaukat</u>, No. 05-3866 (8th Cir. June 27, 2006), 2006 WL 1736380 at *3, citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  "Officers are permitted to use force reasonably 'in a good-faith effort to maintain or restore discipline,' but force is not to be used 'maliciously and sadistically to cause harm.'" <u>Treats v. Morgan</u>, 308 F.3d 868, 872 (8th Cir. 2002), quoting <u>Hudson</u>, 503 U.S. at 7.  "The law recognizes that order and discipline are important in running a correctional institution, but that does not authorize the arbitrary use of force,... nor does it justify punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns." <u>Treats</u>, 308 F.3d at 872 (citations omitted).  "Not every instance of inmate resistance justifies the use of force." <u>Id</u>.

To prevail on an Eighth Amendment excessive force claim against prison officials, a prisoner must demonstrate that the defendants' actions constituted an "'unnecessary and wanton infliction of pain.'" <u>Hudson</u>, 503 U.S. at 5, quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986).  This standard includes both an objective component and a subjective component.

Hudson, 503 U.S. at 8.  To satisfy the objective component of an excessive force claim, the prisoner must show that the "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  Id., quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Hudson, 503 U.S. at 7, quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), cert. denied, 414 U.S. 1033 (1973).    To be actionable, the force used by prison officials must have been more than "de minimis," (Hudson, 503 U.S. at 9-10); it must have been greater than reasonably necessary to address the problem at hand.  The Eighth Amendment does not proscribe all uses of physical force, but only excessive uses of force.

To satisfy the subjective component of an excessive force claim, a prisoner must show that the defendants "'act[ed] with a sufficiently culpable state of mind.'" Hudson, 503 U.S. at 8, quoting Wilson, 501 U.S. at 298.  In short, the defendants must have deliberately intended to hurt the Plaintiff.

To prove that the force used by a prison guard was "excessive," and therefore actionable under the Eighth Amendment, a prisoner must prove that he suffered some type of real injury.  While the injury need not be significant, there must be some "actual injury." White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994); Cummings v. Malone, 995 F.2d 817, 822-23 (8th Cir. 1993).

The Eighth Circuit Court of Appeals has summarized the legal principles governing prisoner excessive force claims as follows:

"The Eighth Amendment protects incarcerated prisoners from cruel and unusual

punishment, and this protection is grounded upon their right to be free from unnecessary and wanton infliction of pain at the hands of correctional officers. Parkus v. Delo, 135 F.3d 1232, 1234 (8th Cir.1998) [cert. denied, 525 U.S. 863 (1998)] (citing Hudson..., [503 U.S. at 5]...).  Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however.  Only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Whitley..., [475 U.S. at 319]... (citations and internal quotations omitted).  Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson, 503 U.S. at 6-7,... (citing Whitley, 475 U.S. at 320-21,...).  Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate.  Id. at 7, ... (citing Whitley, 475 U.S. at 320...).

Not every malevolent touch by a prison guard gives rise to a federal cause of action.  Id. at 9,... (citations omitted).  'The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'  Id. at 9-10,... (citing Whitley, 475 U.S. at 327...) (internal quotations omitted).  Serious or permanent injury is not required to make out an Eighth Amendment claim. Berryhill [v. Schriro, 137 F.3d 1073, 1076-77 (8th Cir. 1998)]... (citing White... [21 F.3d at 281]...).  Some actual injury must be shown, however, and we consider the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred.  Id. at 1076-77 (citing White, 21 F.3d at 281)."

Jones v. Shields, 207 F.3d 491, 494-95 (8th Cir. 2000).

In this case, Defendants contend that Plaintiff's Eighth Amendment excessive force claim must be dismissed on summary judgment, because the evidence shows that (a) it was necessary to use force to subdue Plaintiff in the sallyport because he was acting aggressively; (b) Defendants used only minimal force to subdue Plaintiff; and (c) Plaintiff suffered no injury as a result of the events that occurred in the sallyport.  According to Defendants, when Plaintiff began to act belligerently, he was deftly lifted up by the waist and lowered to the floor without

suffering any harm.  They claim that they used an approved technique that minimizes the possibility of inmate injury.  They further claim that, in fact, Plaintiff did not suffer any injury, with the possible exception of a scraped knee, as a result of the sallyport incident.

If the affidavits of Bunnell, Pietrus and O'Shaughnessy were the only evidentiary materials before the Court, their motion for summary judgment would undoubtedly be granted.  However, Plaintiff has filed his own declaration, as well as various other evidentiary materials, (see Docket No. 55), which directly contradict much of Defendants' version of the facts.  Comparing Defendants' affidavits with Plaintiff's evidentiary submissions, the Court finds several genuine disputes involving material factual issues.  Two disputed issues of fact are particularly noteworthy.

First and foremost, how was Plaintiff lowered to the ground in the sallyport?  Defendants' affidavits indicate that Plaintiff was physically aggressive and needed to be subdued.  They say that Pietrus picked up Plaintiff by the waist and thighs, while Bunnell and O'Shaughnessy continued to hold onto him by the arms, and that Plaintiff was then harmlessly lowered to the ground.  Plaintiff disagrees.  He states that he was not physically aggressive.  He further states that Bunnell and O'Shaughnessy deliberately let go of his arms, leaving him vulnerable to falling (or getting knocked over) because he was still handcuffed, and Pietrus then grabbed and pulled him by the ankles, so he would fall flat onto his face.

Needless to say, there is a genuine dispute between the parties about what actually happened in the sallyport.  Furthermore, the Court finds this factual dispute to be "material," for summary judgment purposes.

Plaintiff apparently was handcuffed at all times during the sallyport incident, and there

12

is nothing in the record to suggest that he posed any real danger to Defendants, or anyone else. Moreover, Plaintiff's handcuffs would have made it impossible for him to protect himself from injury, if he was indeed tackled in the manner described in his declaration. Based on Plaintiff's explanation of how he was "taken down," which must be accepted for summary judgment purposes, a jury could find that Defendants used more force than was necessary under the circumstances. A jury could also find that Defendants knew, (or certainly should have known), that Plaintiff probably would get hurt by being "taken down" in the manner that he has described. Thus, if Plaintiff's version of the sallyport incident were to be accepted by a jury, he might be able to satisfy both the objective and subjective components of an excessive force claim.

There also is a genuine factual dispute about the nature of Plaintiff's injuries. Defendants contend that he suffered nothing more than a scraped knee. Plaintiff states that he suffered a bump on his forehead, bruises on his wrists, and significant pain in his shoulders. Plaintiff has presented evidence in addition to his own declaration, (see p. 5, supra), which seems to suggest that his injuries were more serious than Defendants have reported.

The Court finds the dispute over Plaintiff's injuries to be material, because the existence of an "actual injury" is a critical component of Plaintiff's Eighth Amendment claim. Without proof of an actual injury, his claim would fail; but if he can prove that Defendants injured him during the sallyport incident, his claim is viable. Furthermore, the dispute over Plaintiff's injuries is an important aspect of the broader credibility issues involved in this case. If a jury were to find that Defendants have been dishonest about Plaintiff's injuries, that could

13

undermine Defendants' credibility on other issues – including what really happened in the sallyport.  Of course, the converse is also true – if a jury were to disbelieve Plaintiff's injury claims, that would tend to undermine his overall credibility.

Defendants seem to believe that there is no "genuine" issue of fact presented in this case, because their evidence is credible, and Plaintiff's is not.  (See "Defendants' Memorandum Of Law In Reply To Plaintiff's Response To Defendants' Motions To Dismiss And For Summary Judgment," [Docket No. 57], pp. 3-5.)  That reasoning must rejected.  It is entirely possible, of course, that Plaintiff's version of the facts is full of outright falsehoods, and that Defendants' version of the facts is entirely accurate.  However, the Court cannot make that determination based solely on the present evidentiary record.  Plaintiff's claims are supported by his declaration, and his other evidentiary submissions, which are not inherently incredible. The Court cannot simply choose to disbelieve that evidence, as Defendants seem to be requesting.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  See also Lawrence v. Bowersox, 297 F.3d 727, 732 (8th Cir. 2002) ("'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge'"), quoting Phillips v. Collings, 256 F.3d 843, 847 (8th Cir.2001); Johnson v. Blaukat, 2006 WL 1736380 at *4 (district court "erred by finding facts in favor of the defendants on disputed material issues," rather than "viewing the contested facts in favor of" the non-moving party).

In this case, there are genuine issues of material fact about what really happened in the

sallyport, and what, if any, injuries Plaintiff sustained as a result of the sallyport incident.  Here, as in <u>Johnson</u>, "there are several material questions of fact about whether [the defendants] used excessive force, including whether their acts were defensive in nature,... or motivated by anger; whether they were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation."  <u>Id</u>.  These issues preclude the Court from granting summary judgment in favor of Defendants Bunnell, Pietrus and O'Shaughnessy on Plaintiff's excessive force claim.[2]

B.  <u>Qualified Immunity</u>

Defendants further contend that Plaintiff should be barred from suing them by the doctrine of qualified immunity.  "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."  <u>Yowell v. Combs</u>, 89 F.3d 542, 544 (8th Cir. 1996),

---

[2]  Defendants apparently have assumed that Bunnell and Pietrus are being sued for use of excessive force, while O'Shaughnessy is being sued only for failing to protect Plaintiff from Bunnell and Pietrus.  The current record suggests, however, that O'Shaughnessy also participated in the events giving rise to Plaintiff's excessive force claim.  According to Plaintiff, O'Shaughnessy let go of his left arm immediately before Pietrus tackled him by the ankles.  If that is proven to the satisfaction of the ultimate factfinder in this case, (despite O'Shaughnessy's unequivocal denial), then it would appear that O'Shaughnessy actively participated with Bunnell and Pietrus in the "take down" procedure that allegedly involved excessive force.  Thus, the Court finds, based on the evidence supporting Plaintiff's excessive force claim, that O'Shaughnessy cannot be dismissed from this case on summary judgment.  In light of that determination, there is no need to formally consider and decide whether Plaintiff has also presented sufficient evidence to proceed on a separate "failure to protect" claim against Defendant O'Shaughnessy.  <u>See</u> <u>Estate of Davis v. Delo</u>, 115 F.3d 1388, 1395 (8th Cir.1997) (affirming verdict finding prison officials liable for failing to protect inmates from excessive use of force by another prison official).  The Court notes, however, that the current record could support a failure to protect claim against Defendant O'Shaughnessy, and if this case proceeds to trial, Plaintiff should be allowed to prosecute that claim, and present his evidence to support it.

citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity protects 'all but the plainly incompetent or those who willingly violate the law.'" Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998), quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether a government official is entitled to qualified immunity, a court must perform a two-prong analysis.  First, the court must "determine whether the plaintiff has alleged the violation of a constitutional right."  Manzano v. South Dakota Dept. of Social Services, 60 F.3d 505, 509 (8th Cir. 1995).  Second, the court must determine if the constitutional principle at issue was so clearly established at the time of the defendant's actions that a reasonable government official would have known that he or she was violating the plaintiff's constitutional rights.  Id.  See also Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998) (en banc) ("First, the court must see if a deprivation of constitutional magnitude has been alleged.  If so, the court must determine if that right was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act.").

In this case, Plaintiff certainly has passed the first part of the qualified immunity test, because he clearly has alleged that Defendants violated his constitutional rights under the Eighth Amendment.  The Court also finds that the constitutional right on which Plaintiff's claim is based was "well established" for qualified immunity purposes, because it has been clear since at least 1992, when the Supreme Court decided Hudson v. McMillian, that the Eighth Amendment prohibits prison guards from inflicting unnecessary and wanton pain on inmates by the use of excessive force.  In Treats v. Morgan, the Court of Appeals held that, for purposes of resolving a qualified immunity defense, "[i]t is 'well established that a malicious

16

and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause.'" 308 F.3d at 875, quoting Foulk v. Charrier, 262 F.3d 687, 702 (8th Cir.2001). See also Estate of Davis v. Delo, 115 F.3d 1388, 1394-95 (8th Cir. 1997) (prison officials were not entitled to qualified immunity on excessive force claim, because it was well-established that their actions, "striking an unresisting inmate 20 to 25 times in the head," violated the Eighth Amendment).

"Qualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000), quoting Harlow, 457 U.S. at 818 (emphasis added). Based on Plaintiff's version of the facts, which the Court must accept on summary judgment, it appears that Defendants Bunnell, Pietrus and O'Shaughnessy deliberately tried to injure Plaintiff in the sallyport. A reasonable correctional officer would have to know that deliberately trying to injure a handcuffed inmate, in the manner described in Plaintiff's declaration, constitutes excessive force, and violates the Eighth Amendment. Thus, the Court concludes that Bunnell, Pietrus and O'Shaughnessy are not entitled to qualified immunity in this case.

C. Plaintiff's Claims Against Defendants Herold and Noll

Plaintiff claims that Defendants Herold and Noll violated his federal constitutional rights by failing to create an accurate and complete medical record of the injuries that he allegedly suffered as a result of the sallyport incident. Herold and Noll contend that Plaintiff's claim against them must be dismissed, because the Eighth Amendment does not require them to

17

meet any particular medical record-keeping standards.  The Court must agree with Defendants, as Plaintiff has not cited (and the Court is not otherwise aware of) any legal authority suggesting that the Constitution imposes any medical record-keeping responsibilities on prison officials.

As Defendants have correctly acknowledged, the Eighth Amendment prohibits prison personnel from deliberately disregarding a prisoner's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In this case, however, Plaintiff is not claiming that Defendants Herold and Noll deliberately disregarded his serious medical needs.  More importantly, he has not presented any evidence that would support such a claim.

The Court recognizes Plaintiff's broad allegation that "not reporting the physical description and the fall on the forehead to concrete deprived the plaintiff of future medical treatment and opinions." (Plaintiff's Memorandum of Law In Opposition To Defendant's Reply [etc.], [Docket No. 59], p. 2.)  Plaintiff contends that sometime after the sallyport incident he sought further medical care for "headaches, visions problems and mental capacity," but those concerns "could not be diagnosed properly due the information [sic] was not reported detailing the injury."  (Id., p. (3).)  The Court rejects this argument, because Plaintiff has made no attempt to explain why Defendants' alleged misconduct supposedly prevented other health care providers from properly treating his later alleged health concerns.  Plaintiff has presented no credible evidence showing a specific "serious medical need" that actually went untreated as a direct result of Defendants' alleged failure to adequately transcribe his injuries onto his medical records.

In sum, Plaintiff has presented no legal authority suggesting that Defendants Herold

and Noll had an independent Eighth Amendment duty to maintain accurate and complete medical records.  Nor has Plaintiff presented any evidence showing that the alleged failure to properly record his medical condition deprived him of medical attention for any serious medical needs.  Therefore, Plaintiff's Eighth Amendment claims against Defendants Herold and Noll cannot survive their motion for summary judgment.

## V. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's claims against Defendants Bunnell, Pietrus, and O'Shaughnessy cannot be dismissed on summary judgment. If the facts set forth in Plaintiff's declaration and other evidentiary submissions are true, as the Court must assume for purposes of the present summary judgment motion, then a jury could find that Bunnell, Pietrus and O'Shaughnessy violated Plaintiff's Eighth Amendment rights by using excessive force against him while he was handcuffed in a secured sallyport.  Plaintiff appears to be facing a difficult burden of proof in this case, as he will be asking a jury to accept his testimony as a convicted criminal, and reject the consistent and mutually reinforcing testimony of three state correctional officials.  However, on the present record, the Court cannot conclude, as a matter of law, that Plaintiff has no actionable claim against Defendants Bunnell, Pietrus and/or O'Shaughnessy.

Plaintiff's claims against Defendants Herold and Noll, however, must be dismissed, because he has not demonstrated that he has any sustainable § 1983 claim against either of them.  The Constitution does not impose any minimum medical record-keeping requirements for prisoners, and Plaintiff has presented no evidence showing that he was denied treatment for any serious medical needs because of Herold's and Noll's alleged record-keeping

omissions. The Court will therefore recommend that Plaintiff's claims against Herold and Noll be dismissed with prejudice.

## VI. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, (Docket No. 38), be granted in part, and denied in part;

2. Plaintiff's claims against Defendants Darby Bunnell, Paul Pietrus, and Brian O'Shaughnessy not be dismissed at this time; and

3. Plaintiff's claims against Defendants Marylynn Noll and Ann Herold be dismissed with prejudice.

Dated: July 31, 2006

   s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before August 14, 2006.